BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**ETHAN D. KNIGHT, OSB #99298**
**GEOFFREY A. BARROW**
Assistant United States Attorneys
ethan.knight@usdoj.gov
geoffrey.barrow@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:16-MJ-00004 |
| | 3:16-MJ-00006 |
| v. | |
| **AMMON BUNDY,** | |
| **JON RITZHEIMER,** | **GOVERNMENT'S MEMORANDUM** |
| **JOSEPH O'SHAUGHNESSY,** | **IN SUPPORT OF** |
| **RYAN PAYNE,** | **PRETRIAL DETENTION** |
| **RYAN BUNDY,** | |
| **BRIAN CAVALIER,** | |
| **SHAWNA COX,** | |
| **PETER SANTILLI,** | |
| **JASON PATRICK,** | |
| **DUANE LEO EHMER, AND** | |
| **DYLAN ANDERSON.** | |
| **Defendants.** | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Ethan D. Knight and Geoffrey A. Barrow, Assistant United States Attorneys, hereby files this memorandum in support of pretrial detention of defendants. For the reasons set forth below and based on the information that will be presented at the January 29, 2016, detention hearing, this Court should detain defendants pending trial.

The underlying facts of the alleged conspiracy pose unique issues that weigh in favor of detaining all defendants. By its very nature, this offense demonstrates a remarkable inability on the part of all charged defendants to follow the law, and thus comply with the terms of court-ordered supervision. In this case, all defendants deliberately and publicly disregarded repeated orders, requests, and pressure to obey the law over a sustained period of time. They did so in manner that endangered, and continues to endanger, the residents of Harney County, Oregon. Critically, the alleged crime was not born out of impulse—it was deliberate and designed to undermine authority at every stage. As a result, each defendant appears before this Court having already demonstrated that no condition or combination of conditions could reasonably assure their appearance or the safety of the community.

## I.    PROCEDURAL HISTORY

On January 26, 2016, defendants Ammon Bundy, Ritzheimer, O'Shaughnessy, Payne, Ryan Bundy, Cavalier, Cox, and Santilli were arrested. Subsequently on January 26, 2016, this Court authorized a complaint against said defendants charging them with conspiring to impede officers of the United States from discharging their official duties through the use of force, intimidation, or threats, in violation of Title 18, United States Code, Section 372. On January 27, 2016, the complaint was filed with the Clerk of the Court (Case No. 16-MJ-00004), and defendants made an initial appearance on the complaint.

On January 27, 2016, defendants Patrick, Ehmer, and Anderson were arrested. On January 28, 2016, this Court authorized a complaint charging these defendants with being part of the same conspiracy (Case No. 16-MJ-00006). Defendants made an initial appearance on the complaint that same day.

**Government's Memorandum in Support of Pretrial Detention**                                **Page 2**

At the time of the initial appearance, defendants were detained by Magistrate Judge Stacie F. Beckerman until a detention hearing on January 29, 2016. A preliminary hearing is scheduled for February 3, 2016, and arraignment is set for February 24, 2016.

## II. FACTUAL BACKGROUND

The factual background is contained in the complaints filed in the above-referenced cases.

## III. ARGUMENT

Under the Bail Reform Act, a judicial officer shall detain a defendant pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a flight risk or a danger to the community. It is not necessary to prove both. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985); *United States v. Kouyoumdijan*, 601 F. Supp. 1506, 1508-10 (C.D. Cal 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *See Motamedi*, 767 F.2d at 1406.

In determining whether pretrial detention is appropriate, the court should consider four factors under 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the history and characteristics of the defendant; and, (4) the nature and seriousness of the danger posed by defendant's release. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); 18 U.S.C. § 3142(g).

/ / /

/ / /

### A. Statutory Factors Requiring Detention

Title 18, United States Code, Section 3142(g) sets forth factors for the court to consider in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. The following factors apply to all defendants in this matter.

#### 1. Nature and Circumstances of the Offense

The charged offense involves the ongoing armed occupation of the Malheur National Wildlife Refuge (MNWR). Title 18, United States Code, Section 372 is a crime of violence for purposes of the Bail Reform Act because it "has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" and it is a felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(A).

#### 2. Weight of the Evidence

There is overwhelming evidence of defendants' guilt, much of it documented by social media and defendants' statements.

#### 3. History and Characteristics of the Defendants

As set forth below, all but one of the defendants in this case have no ties to Oregon. They traveled to this state to join the charged conspiracy. Many have long been associated with armed conflicts with the federal government and have repeatedly rejected the authority of the federal government, making them unsuitable for court-ordered supervision.

/ / /

/ / /

### 4. Nature and Seriousness of the Danger to Any Person or the Community

While the armed occupation of the MNWR continues, there remains a substantial danger that the defendants will return to the MNWR or another federal facility to assert their claimed authority over federal lands. Their release poses substantial danger to the citizens of Harney County and those involved in bringing an end to the armed occupation of the MNWR.

### B.     Application of Statutory Factors to Each Defendant

#### Ammon BUNDY

Defendant Ammon Bundy should be detained as a flight risk and as a danger to the community. Bundy's leadership role in the conspiracy as well as his repeated disregard for the type of authority that would be attendant to pretrial supervision make him uniquely unsuitable for release. As a threshold matter, Bundy, despite his visibility, lacks ties to the District of Oregon. This creates an inherent risk of flight. Moreover, Bundy's own statements demonstrate his unwillingness to comply with the terms of pretrial supervision. On August 16, 2015, Bundy posted on Facebook that "There is no justice in a federal court. The feds have used the courts to take rights not protect them." His danger to the community is tied directly to his role in the offense. As the armed group's unrepentant leader, he has consistently and publicly expressed support for an armed occupation that endangered, and continues to endanger, many people. On November 21, 2015, Bundy posted on Facebook that "I will not stop until the Hammond's [sic] are home free, without fear. I do not fear for my life." Additionally, Bundy, repeatedly disregarded requests and orders to leave the MNWR during the occupation.

Bundy has engaged in similar conduct before his role in the current offense. According to numerous public reports, Bundy also participated in the April 2014 armed standoff with BLM

**Government's Memorandum in Support of Pretrial Detention**                                    **Page 5**

employees regarding his father's land in Bunkerville, Nevada. Relatedly, public reporting also demonstrates that Bundy consistently travels or is surrounded by armed bodyguards, undermining the viability of any pretrial release plan. In short, Bundy poses a unique flight risk and danger to the community.

### Joseph O'SHAUGHNESSY

Defendant O'Shaughnessy should be detained as a danger to the community and as a risk of flight. O'Shaughnessy is a leading member of the group and one of the first to occupy the MNWR. As noted in the complaint, O'Shaughnessy was captured in a video taken by co-defendant Santilli on the MNWR. In the video, O'Shaughnessy recruits others to join the armed occupation to "make sure that these federal agents and this corrupt government doesn't come through those gates." In the same video, O'Shaughnessy explains that he is working to "set up a constitutional security protection force to make sure that these federal agents and these law enforcement don't just come in here like cowboys, that's we have to prevent that." Photographs taken in and around the MNWR depict O'Shaughnessy in tactical dress carrying what appears to be an assault rifle.

O'Shaughnessy poses a risk of flight. He has no ties to the District of Oregon. He also has no legitimate employment. His criminal history includes arrests for disorderly conduct, domestic violence, and drugs. In 2007, he was convicted for failure to appear.

O'Shaughnessy was arrested in Burns, Oregon, on January 26, 2016. He was a passenger in a pickup truck with two other men. There were multiple firearms in the vehicle.

/ / /

/ / /

**Government's Memorandum in Support of Pretrial Detention**                                **Page 6**

## Ryan PAYNE

On January 2, 2016, Payne led an armed group to the MNWR.  Under Payne's direction, the occupiers blocked the entrance to the facility and established armed patrols to defend the occupation.  As set forth in the complaint, Payne was photographed carrying a weapon in and around the MNWR.  The armed occupation of the MNWR continues.

Payne poses a substantial danger to the community.  By his own admission, he has been involved in armed efforts to oppose the federal government's authority for several years.  In a June 2014 interview with the <u>Missoula Independent</u>, Payne recounted learning about BLM efforts to remove Cliven Bundy's cattle from public lands in Bunkerville, Nevada, in April 2014.  *See* Ted McDermott, *Freedom Fighter*, <u>Missoula Indep.</u>, June 12, 2014, available at: <u>http://missoulanews.bigskypress.com/missoula/ freedom-fighter/Content?oid=2054145</u>. According to Payne, he called Cliven Bundy to offer the assistance of Operation Mutual Aid (OMA), a group Payne cofounded to oppose the federal government.  In the article, Payne is quoted as saying, "I'm an advisor and coordinator for OMA . . . and I was Mr. Bundy's militia liaison.  He would tell me what he had planned, and then I would advise him as to what the militia could accomplish in support of that."  Payne describes serving "as a kind of on-the-ground commander" during an armed conflict with federal law enforcement officers.  "We locked them down . . . [w]e had counter-sniper positions on their sniper positions.  We had at least one guy—sometimes two guys—per BLM agent in there.  So, it was a complete tactical superiority. . . .  If they made one wrong move, every single BLM agent in that camp would've died."  Payne also told the reporter, "And you can kill me, you can take all of my money, you can steal all of my possessions, but as long as I know that I'm moving in the right direction, that I have

**Government's Memorandum in Support of Pretrial Detention** **Page 7**

maintained the moral high ground, that I focus on truth, love and unity at all times, there's no fear. There's no suffering. I enjoy the pain that happens, because I know that it's for the right reasons. A greater cause than myself."

Payne poses a danger to others. In media interviews, Payne has talked about "arresting" officials that he believes have violated their duties. In a March 25, 2014, webcast, Payne explained that one purpose of OMA is "to showcase what can be done, what people are capable of. When we go in to an operation, when we go make a citizen's arrest, we will not be stopped. . . . It's not going to be us asking them to put their hands in these handcuffs. We're going to arrest them. We're going to take them out of their position."

In a June 2014 audio interview, Payne talked about working to release those detained for opposing the federal government:

> In the event that they start arresting people . . . particularly those that went there and they either stood guard, they stood in front of the Bundys, they pointed guns at the BLM . . . the instant that one of those men is arrested, and there are not viable charges that are unrelated to this incident . . . that will become our main effort. I will divert every ounce of energy I have to getting that person released, and I mean in any way shape or form. I will pursue them to the ends of this earth.

In the same interview, Payne talked about forming Operation Mutual Defense (OMD) to fulfill the same mission as OMA.[1]

Payne has no known employment and no ties to Oregon. His last known residence was living with his grandmother in Montana. He reported income of $4000 per month but provided no information about the source of that income.

---

[1] The interview was reviewed by an agent on June 13, 2014. At that time, the interview was publically available at available at: http://patriotsinformationhotline.com/discussion/189/jerry-bruckhart-ryan-payne-interview.

**Government's Memorandum in Support of Pretrial Detention**     **Page 8**

If Payne were released, he would pose a substantial danger to the community. Following his arrest, Payne was advised of his *Miranda* rights. He agreed to speak with an agent. He expressed no remorse for the armed occupation of the MNWR. He explained that he had taken an oath to uphold the constitution against corruption and particularly the federal government's unlawful possession of land. He claimed to have an absolute duty to prevent the federal government from continuing to manage lands. He also talked about his duty to prevent the federal government from having a "monopoly on the use of force." He claimed a right to use force to oppose an unlawful arrest.

If released, Payne will return to the MNWR or another federal facility to repeat the events that have terrorized the citizens of Harney County for nearly a month.

### Ryan BUNDY

Defendant Ryan Bundy should be detained as a danger to the community and as a flight risk. Ryan Bundy's leadership role in the armed takeover of the MNWR and his repeated disregard for authority make him unsuitable for pretrial supervision. Ryan Bundy has no legitimate ties to the District of Oregon. This creates an inherent risk of flight. Moreover, Bundy's own statements suggest an unwillingness to comply with the terms of pretrial supervision, and therefore a flight risk. On January 9, 2016, Ryan Bundy told reporters that the Federal government needs to be "taken on." He also said that the group was armed in order to be taken seriously.

Ryan Bundy has engaged in similar conduct before his role in the current offense. According to numerous public reports, Bundy also participated in the April 2014 armed standoff against BLM employees regarding his father's land in Bunkerville, Nevada. Ryan Bundy was

**Government's Memorandum in Support of Pretrial Detention**                                    **Page 9**

photographed carrying a sidearm on the MNWR. Public reporting also demonstrates that Ryan Bundy and his brother Ammon Bundy consistently travel with or are surrounded by armed bodyguards, undermining the viability of any pretrial release plan.

While Bundy's criminal history consists of misdemeanors, they reflect his disdain for authority and refusal to follow court orders. In 2008, he was convicted of obstructing police–resisting/interfering with an arrest in Cedar City, Utah. He has a 2012 theft conviction. In 2015, he was charged with failure to appear, interfering with an officer, and interfering with an arresting officer in Iron County, Utah. Public media accounts of this incident report that Ryan Bundy had to be restrained by three court bailiffs who were attempting to take him into custody on a failure to appear warrant.

If released, Bundy will return to the MNWR or another federal facility to repeat the events that have disrupted Harney County for nearly a month.

### Brian CAVALIER

Defendant Cavalier should be detained as a danger to the community and a flight risk. Cavalier is a danger to the community because his prior criminal conduct, use of firearms, and role in the offense. Cavalier has a series of criminal convictions dating to the 1990s, including felony convictions that restrict his access to firearms. Notwithstanding this prohibition, Cavalier continues to possess firearms. In an undated picture from an article posted to the Daily Mail website (http://www.dailymail.co.uk/news/article-3387117/Stolen-valor-Militiaman-bodyguard-ranchers-Cliven-Ammon-Bundy-posing-retired-Marine-served-Afghanistan-Iraq-boost-combat-credentials.html), Cavalier is shown lying in a bed with a handgun. The picture is undated but Cavalier's physical appearance resembles his current

**Government's Memorandum in Support of Pretrial Detention**                                    **Page 10**

appearance. Cavalier was also arrested weeks ago in Arizona, after temporarily leaving the MNWR, in a car with a firearm and allegedly provided police with a false name and social security number.

Cavalier poses a risk of flight. As a threshold matter, he also lacks ties to the District of Oregon. In addition, his unwillingness to leave the MNWR despite orders to do so and self-professed connection to the conspiracy as Ammon Bundy's bodyguard prove him to be uniquely unsuitable for release.

### Shawna COX

Defendant Cox is a danger to the community while the armed occupation of the MNWR continues. Defendant Cox joined the occupation of the MNWR in early January. She worked as a spokesperson for the occupiers.

The government is willing to consider a release plan for defendant Cox conditioned on an end to the armed occupation of the MNWR. In addition to the standard conditions of release, the government proposes the following special conditions:

- Defendant shall not enter any federal facility without prior authorization by Pretrial Services, except as necessary to attend court proceedings;
- Defendant is not permitted to be in the District of Oregon, except as necessary to attend court proceedings;
- Defendant shall have no contact with name co-defendants; and
- Defendant shall not possess firearms.

/ / /

/ / /

**Government's Memorandum in Support of Pretrial Detention**        **Page 11**

## Peter SANTILLI

Defendant Santilli should be detained as a danger to the community and a flight risk. Santilli is a flight risk because of a lack of stable community ties and his professed unwillingness to abide by any authority that would manage his supervision. Santilli has no ties to the District of Oregon other than coming to engage in criminal activity. Santilli appears to be a resident of Ohio, but most recently listed his address as the Silver Spur Motel in Burns, Oregon. Santilli has also demonstrated an unwillingness to abide by court-ordered mandates. In a comment made by Santilli on YouTube in episode 1074 of the *Pete Santilli Show*, he said that he had a bunch of registered guns that he did not turn in when he had a restraining order filed against him in California: "I have my stuff buried, I'm not going to be at the mercy of the system." There are no combination of conditions that would ensure Santilli's appearance. He should be detained.

## Jason PATRICK

Defendant Patrick should be detained as a danger to the community and a flight risk. Patrick's criminal history and lack of ties to the District of Oregon make him especially unsuitable for release. Patrick is currently charged with Making Terrorist Threats in Houston County, Georgia. This charge arises from an incident in August 2014 where he threatened to kill everyone inside the Warner Robins Municipal Court Complex. Patrick posted bond and was released in that case. One of the conditions of his release was that he not possess weapons. Notwithstanding this condition, Patrick travelled across the country and participated in an armed occupation of the MNWR. Patrick was photographed with a pistol and reportedly used an AR-15-style rifle during the occupation, both in violation of his current release plan. All of these

/ / /

**Government's Memorandum in Support of Pretrial Detention**　　　　　　　　　　　　**Page 12**

factors support detention of Patrick both as a danger and as a flight risk with no ties to the District of Oregon.

### Duane Leo EHMER

Defendant Ehmer should be detained as a danger to the community.   While Ehmer appears to have ties to Oregon, his participation in the occupation, use of firearms in connection with the occupation, and criminal history make him unsuitable for release as a danger to the community. Ehmer's criminal history militates against release.   Ehmer has a series of convictions stretching back more than two decades.   While Ehmer's convictions are old, they demonstrate a pattern of behavior that prove Ehmer is unamenable to supervision.   Ehmer's use of firearms in connection with the charged offense also underscores his danger to the community.   Ehmer is a convicted felon and is prohibited from possession of firearms.   When he was arrested, during the occupation, Ehmer had a pistol in his possession.   Anther firearm was located belonging to Ehmer.   Finally, on January 6, 2016, during the occupation, Ehmer posted a picture of a battle scene on Facebook captioned with the wording: "The only way to win a war is to kill enough of the enemy that they do not want to fight anymore."   Defendant Ehmer should be detained as a danger to the community.

### Dylan ANDERSON

Dylan Anderson, aka Captain Moroni, should be detained as a danger to the community and as a risk of flight.   Anderson was among the first to join the armed occupation of the MNWR. On January 3, 2016, the media photographed defendant guarding the entrance to the MNWR.   He was also photographed in and around the MNWR carrying a rifle.

/ / /

**Government's Memorandum in Support of Pretrial Detention**                                                                 **Page 13**

Anderson poses a risk of flight. His criminal history is minor, but it includes drug and alcohol offenses and a failure to appear. He has no ties to Oregon. He is unemployed and has no income. He reports living with his mother in Utah.

Anderson poses an unacceptable danger to the community. While on the MNWR, he told a reporter, "I didn't come here to shoot, I came here to die." He further explained that he was inspired to come to the MNWR by Ammon Bundy. The inspiration to join the armed occupation was validated by God in the form of a flock of geese. He told reporters, "I just knew it was the right thing [to come to Oregon] . . . . I'm willing to die here."

## IV.   CONCLUSION

Based on the above and the information to be presented at the January 29, 2016, detention hearing, the government respectfully moves that the Court detain defendants pending trial.

Dated this 29th day of January 2016.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Ethan D. Knight*
ETHAN D. KNIGHT, OSB #99298
GEOFFREY A. BARROW
Assistant United States Attorneys