**Thomas K. Coan, OSB #89173**
tom@tomcoan.com
Attorney at Law
1001 SW Fifth Ave., Suite 1400
Portland, OR  97204
(503) 221-8736

Attorney for Defendant Santilli

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>AMMON BUNDY,<br>JON RITZHEIMER,<br>JOSEPH O'SHAUGHNESSY,<br>RYAN PAYNE,<br>RYAN BUNDY,<br>BRIAN CAVALIER,<br>SHAWNA COX, and<br>PETER SANTILLI,<br><br>  Defendants. | Case No. 3:16-mj-00004<br><br>**DEFENDANT PETER SANTILLI'S MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE FROM CUSTODY** |

Defendant Peter Santilli, through his attorney Thomas K. Coan, submits this memorandum in support of Mr. Santilli's pretrial release.

**I.    Background**

After a hearing on defendant's motion to revoke the detention order, the Court set another hearing for further review of statements made by Santilli on his Internet news show that the prosecution offered as evidence of supposed threats by Santilli.  The

proffered statements are summarized as follows: Santilli stated in one of his broadcasts that the feds are a bunch of pussies and that "I will take care of your families for you." In another instance, he stated that the prosecutor in a case should have his balls placed in a vise. On another occasion he stated in a broadcast that he had buried some guns after a restraining order was entered. The prosecutor also made a claim that Santilli had called a Florida judge to ask her to recuse herself from a case, and that on another occasion he stated that if marshal's raided his home at 4 in the morning, he would shoot them. The prosecutor offered other evidence of incendiary language by Santilli as further support for denying him pretrial release.[1]

## II.   True Threat Jurisprudence

Although the recent decision in *Elonis v. United States*, 135 S. Ct. 2001 (2015), deals with the issue of threats, it never addressed the constitutional protection afforded by the First Amendment. The Court's ruling was limited to finding that the federal threat statute at issue in that case required a showing that the defendant intended to threaten the alleged victim, and that the fact that the victim reasonably believed he had been threatened was not sufficient. Given this disposition, the Court held that it was not necessary to consider any First Amendment issues, *id.* at 2012, and it did not discuss what expression constitutes a "true threat" outside of the protection of the constitution.

In *Brandenburg v. Ohio*, 395 U.S. 444 (1969), the Court made it clear that the First Amendment protects speech that advocates violence, so long as the speech is not directed

---

[1] At the time set for the preliminary hearing today, AUSA Ethan Knight informed counsel that the Government found additional inflammatory statements that they may offer as well. While we do not have any further information about the particulars of these other statements, we believe the same analysis should be applied.
[2] During a public anti-war rally on the Washington Monument grounds during a discussion of police brutality, Watts, who was 18 years old, stated: "They always holler at us to get an

Page 2 – SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

to inciting or producing imminent lawless action and is not likely to incite or produce such action. *Accord Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1071 (9th Cir. 2002) (en banc). Similarly, in *Watts v. United States*, 394 U.S. 705 (1969), the Court ruled that under a statute making it a crime to willfully make a threat of bodily harm to the president, the prosecution was required to prove that the defendant had uttered a "true threat." It went on to rule that the kind of political hyperbole engaged in by the defendant[2] did not constitute a true threat. It wrote that the decision whether an utterance constitutes a true threat must be determined

> against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The language of the political arena, like the language used in labor disputes, see *Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 58 (1966), is often vituperative, abusive, and inexact. We agree with petitioner that his only offense here was "a kind of very crude offensive method of stating a political opposition to the President." Taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise.

*Watts*, 394 U.S. at 708.

Based on *Watts*, the Ninth Circuit has set forth the following criteria for determining whether statements constitute "true threats" beyond the protection of the First Amendment:

---

[2] During a public anti-war rally on the Washington Monument grounds during a discussion of police brutality, Watts, who was 18 years old, stated: "They always holler at us to get an education. And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. They are not going to make me kill my black brothers." *Watts* , 394 U.S. at 706.

Page 3 – SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

> Under our cases, a threat is "an expression of an intention to inflict evil, injury, or damage on another.". . . "Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners.". . . "'The fact that a threat is subtle does not make it less of a threat.'". . . A true threat, that is one "where a reasonable person would foresee that the listener will believe he will be subjected to physical violence upon his person, is unprotected by the first amendment."

*Planned Parenthood*, 290 F.3d at 1075 (citations omitted). That court summarized that a true threat is "a statement which, in the entire context and under all the circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person" *Id.* at 1077.

The Ninth Circuit also noted that other cases have identified several factors bearing on whether expression is a true threat: the reaction of the recipient and of other listeners, whether the threat was communicated directly to its victim, whether the maker of the threat had made similar statements to the victim in the past, and whether the victim had reason to believe that the maker had a propensity to engage in violence. *Id.* at 1078 (citing *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996)).

**II.    Under this analysis, none of Santilli's statements identified by the government constituted true threats and as such were expression protected by the First Amendment.**

A. <u>In particular, the statements were made as part of Santilli's commentary on the government and his expression of generalized opposition to it</u>. His statements were in the context of discussions on public issues dealing with the growing aggressiveness of law enforcement and the movement to deprive citizens of their Second Amendment right to

bear arms.  As such, these statements are no different from the political hyperbole the Supreme Court ruled was not a true threat in *Watts*.

       B.  <u>As in *Watts*, any statement by Santilli of an intent to employ force or violence also were conditional and did not evince a present intent to harm anyone</u>.  Thus, any statement that he would shoot persons entering his house present an implausible hypothetical that cannot be taken as a serious threat.  Indeed, Santilli stated that law enforcement should knock and announce themselves if they raided his house, and it was only in the situation where he did not know who was attacking his home that he would employ violence.  This is a far cry from a statement that Santilli was seeking out officers to harm them, which might be considered a true threat.

       C.  <u>Also telling is that until these proceedings involving Santilli's eligibility for pretrial release, the government had made no issue of Santilli's statement and never indicated that they believed these statements constituted a true threat to federal officers.</u>  This reaction is significant because it shows that even the government did not consider these statements true threats against federal officers.  This is almost certainly because the government realized that Santilli has no history of violence, much less violence against government officials, and so understood that his statements were political rhetoric devoid of any purpose to threaten.

       D.  <u>Finally, the statements do not identify or target any specific individual and were not disseminated in a way that would indicate any individual was being singled out.</u>  They were made in connection with his news and commentary shows and were meant for mass dissemination.  Santilli's expression was not sent to discrete individuals or groups of persons by some targeted form of communication (such as e-mail or telephone).  Moreover,

Page 5 – SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

no individuals were specified or named in the statements; any listener would understand that the statements were meant to express dissatisfaction and anger with the government writ large, and not as a warning of violence against a particular person or group of individuals.

### III.    Conclusion

Considering all the circumstances and factors, it cannot be doubted that the statements the government points to as justifying Santilli's detention were not serious expressions of an intent to do harm to government officers. As such, they were not "true threats"—they constituted political speech protected by the First Amendment. Santilli should not suffer adverse consequences at the hand of the government as a result of this exercise of his fundamental right to freedom of speech.

DATED this 3rd day of February 2016.

*Thomas K. Coan*
Thomas K. Coan, OSB 89173
Attorney for Defendant
